PRESENT:  All the Justices

DAVID F. LIGON, III

v.    Record No. 090250                    OPINION BY
                                  JUSTICE BARBARA MILANO KEENAN
                                        February 25, 2010
COUNTY OF GOOCHLAND

                  FROM THE CIRCUIT COURT OF GOOCHLAND COUNTY
                          Timothy K. Sanner, Judge

        In this question of first impression involving the Virginia

Fraud Against Taxpayers Act (VFATA), Code §§ 8.01-216.1 through

-216.19, we consider whether the doctrine of sovereign immunity

bars a retaliatory discharge claim against a County filed under

the "whistleblower protection" provision in Code § 8.01-216.8.

        David F. Ligon, III filed a complaint in the circuit court

against his former employer, Goochland County (the County),

asserting that Ligon unlawfully was terminated from his

employment in the County's Building and Grounds Department and

that he was entitled to relief under the "whistleblower

protection" provision in Code § 8.01-216.8.[1]  Ligon alleged that

he was terminated because he opposed certain fraudulent actions

of his former supervisor, Cecil H. Youngblood, or because Ligon

initiated or participated in an investigation of those

practices.  As permitted by Code § 8.01-216.8, Ligon sought

─────────────
        [1] In his complaint, Ligon also asserted a claim of
defamation against his former supervisor, Cecil H. Youngblood.
That claim is not before us in this appeal.

compensatory damages, reinstatement of his employment, twice the amount of his "back pay," and attorney fees and costs.[2]

In his complaint, Ligon asserted that Youngblood used County property for personal gain, that Youngblood permitted employees he supervised to engage in personal errands during work hours, and that he directed employees he supervised to help complete personal projects during work hours.  Ligon alleged that he reported Youngblood's improper actions to an investigator in the County Sheriff's Department and that several weeks later, the investigator interviewed Youngblood.

Ligon alleged that before the events in question, Youngblood previously had given Ligon a positive work evaluation.  However, according to Ligon's complaint, immediately after Youngblood was interviewed by the investigator, Youngblood presented Ligon with a memorandum that criticized Ligon's "attitude" and was intended to "intimidate and harass" Ligon.  Ligon also asserted that the day after the interview, Youngblood terminated Ligon's employment, stating that Ligon had engaged in "disruptive behavior and insubordination."

---

[2] Ligon sought additional damages based on his assertion that Youngblood acted negligently.  However, as previously explained, Youngblood was dismissed from the suit and is not a party to this appeal.

The County filed a demurrer on several grounds, including that Ligon's retaliatory discharge claim was barred by the doctrine of sovereign immunity.[3] After conducting a hearing, the circuit court sustained the County's demurrer, concluding that the County was immune from suit.[4] The circuit court held that the VFATA did not contain a waiver of immunity sufficient to allow an action against the County. Ligon appealed from the circuit court's judgment.

On appeal, Ligon argues that the circuit court erred in sustaining the County's demurrer because the doctrine of sovereign immunity, while applicable to common law tort claims, does not affect statutory claims of retaliatory discharge under the VFATA. Ligon asserts that the plain language of Code § 8.01-216.8 protects "[a]ny employee" from retaliatory discharge, which includes employees of the Commonwealth and its political subdivisions.

In response, the County argues that the doctrine of sovereign immunity is applicable to all claims against the Commonwealth and its political subdivisions, including the claim

_____

[3] In its amended demurrer, the County also argued that the circuit court lacked jurisdiction under Code § 8.01-216.8 because the Commonwealth had knowledge of Ligon's allegations prior to his filing the lawsuit and because Ligon failed to comply with Code § 15.2-1248. The circuit court did not address these issues in its holding.

[4] The circuit court also held that the doctrine of respondeat superior does not apply to the County, but that issue is not before us on appeal.

3

brought by Ligon, unless that immunity is expressly waived by statute. The County contends that the VFATA does not contain an express waiver of immunity and that, therefore, the doctrine of sovereign immunity bars Ligon's suit under the VFATA. We agree with the County's arguments.[5]

The issue whether the doctrine of sovereign immunity barred Ligon from filing a retaliatory discharge claim against the County presents a purely legal question that we review de novo. See Antisdel v. Ashby, 279 Va. 42, 47, ___ S.E.2d ___, ___ (2010); Gray v. Virginia Sec'y of Transp., 276 Va. 93, 97, 662 S.E.2d 66, 68 (2008); Miller v. Highland County, 274 Va. 355, 364, 650 S.E.2d 532, 535 (2007). Under the doctrine of sovereign immunity, the Commonwealth is immune from liability for damages and from suits to restrain governmental action or to compel such action. Gray, 276 Va. at 102, 662 S.E.2d at 70; Afzall v. Commonwealth, 273 Va. 226, 231, 639 S.E.2d 279, 282 (2007). Thus, the Commonwealth is immune from tort liability for the acts or omissions of its agents and employees unless an express statutory or constitutional provision waives that immunity. Rector & Visitors of the Univ. of Va. v. Carter, 267

_____

[5] In this appeal, we are not asked to consider and we do not consider whether Ligon's claim presents a valid assertion that Youngblood engaged in any unlawful practices as described in Code § 8.01-216.3 or that Ligon participated in an investigation of those practices. We consider only the sovereign immunity holding of the circuit court.

Va. 242, 244, 591 S.E.2d 76, 78 (2004); Patten v. Commonwealth, 262 Va. 654, 658, 553 S.E.2d 517, 519 (2001); Melanson v. Commonwealth, 261 Va. 178, 181, 539 S.E.2d 433, 434 (2001). The same immunity principles apply to counties, which are political subdivisions of the Commonwealth. See Mann v. County Board of Arlington County, 199 Va. 169, 174, 98 S.E.2d 515, 518 (1957); Fry v. County of Albemarle, 86 Va. 195, 197-98, 9 S.E. 1004, 1005 (1890).

The doctrine of sovereign immunity serves many purposes. These purposes include protecting the public purse, ensuring the uninterrupted functioning of government, eliminating any public inconvenience and danger that may result from officials being fearful to act, assuring that citizens will continue to accept public employment, and discouraging individuals from improperly threatening or initiating vexatious litigation. Gray, 276 Va. at 101, 662 S.E.2d at 70; Afzall, 273 Va. at 231, 639 S.E.2d at 282; Messina v. Burden, 228 Va. 301, 307-08, 321 S.E.2d 657, 660 (1984).

Only the General Assembly can determine as a matter of policy whether the Commonwealth's sovereign immunity should be abrogated with regard to a particular type of legal action. Afzall, 273 Va. at 230, 639 S.E.2d at 281; Commonwealth v. Luzik, 259 Va. 198, 206, 524 S.E.2d 871, 876 (2000). In reviewing a statute, courts will conclude that the General

5

Assembly has taken such action abrogating the Commonwealth's sovereign immunity only when the statutory language has explicitly and expressly announced such a waiver.  See Gray, 276 Va. at 102, 662 S.E.2d at 71; Afzall, 273 Va. at 230, 639 S.E.2d at 281; Hinchey v. Ogden, 226 Va. 234, 241, 307 S.E.2d 891, 895 (1983); Elizabeth River Tunnel Dist. v. Beecher, 202 Va. 452, 457, 117 S.E.2d 685, 689 (1961).

In this context, we consider whether the doctrine of sovereign immunity bars a claim of retaliatory discharge brought under the VFATA against the Commonwealth or a political subdivision of the Commonwealth.  We hold that it does.

Courts in Virginia generally do not recognize a common law tort claim for retaliatory discharge.  Dray v. New Market Poultry Prods., Inc., 258 Va. 187, 191, 518 S.E.2d 312, 313 (1999); Miller v. SEVAMP, Inc., 234 Va. 462, 468, 362 S.E.2d 915, 918 (1987); but see Bowman v. State Bank of Keysville, 229 Va. 534, 539-40, 331 S.E.2d 797, 800-01 (1985) (applying narrow exception to employment-at-will rule to hold that employees had stated cause of action in tort against directors for retaliatory discharge in violation of public policy).  However, the General Assembly has provided statutory causes of action for retaliatory discharge in certain limited circumstances.  In addition to the "whistleblower protection" provision in the VFATA, the General Assembly also has provided a statutory cause of action for

6

retaliatory discharge for any employee discharged for filing a safety or health complaint, see Code §§ 40.1-51.2:1 and -51.2:2, and for any employee who is fired for filing a workers' compensation claim, see Code § 65.2-308. See Miller, 234 Va. at 468, 362 S.E.2d at 918-19.

The "whistleblower protection" provision in Code § 8.01-216.8 provides a limited cause of action unknown at common law. See Dray, 258 Va. at 191, 518 S.E.2d at 313; Miller, 234 Va. at 468, 362 S.E.2d at 918. The seventh paragraph of Code § 8.01-216.8 states in relevant part:

> Any employee who is discharged, . . . threatened, harassed, or in any other manner discriminated against . . . by his employer because he has opposed any practice referenced in § 8.01-216.3 or because he has initiated, . . . assisted, or participated in any manner in any investigation . . . under this article, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

In creating this cause of action, the General Assembly chose the words "any employee" when identifying the class of employees covered by the statute. See Code § 8.01-216.8. In like manner, the General Assembly identified the "employer" of "any employee" as the person or entity against whom suit may be brought under the VFATA. Id. Notably, however, the General Assembly did not define either the term "employer" or the term

7

"employee" in the VFATA.  Therefore, because neither of these terms contains an explicit reference to the Commonwealth and its political subdivisions or to their employees, we must examine the text of the VFATA to determine whether the General Assembly explicitly and expressly announced a waiver of sovereign immunity permitting the filing of retaliatory discharge actions under Code § 8.01-216.8 by employees of the Commonwealth or its political subdivisions.

We conclude that the General Assembly did not announce such a waiver in the text of the VFATA.  The only mention in the VFATA of actions against the Commonwealth is made in the third paragraph of Code § 8.01-216.8.  That paragraph states, in relevant part:

> No court shall have jurisdiction over an action brought under this article against any department, authority, board, bureau, commission, or agency of the Commonwealth, [or] any political subdivision of the Commonwealth . . . if the action is based on evidence or information known to the Commonwealth when the action was brought.

Code § 8.01-216.8.

This language is silent regarding the question whether employees of the Commonwealth and its political subdivisions are included in the term "[a]ny employee" in the seventh paragraph of Code § 8.01-216.8.  Although the above language in the third paragraph indicates that the General Assembly contemplated that the Commonwealth may be named as a defendant in some type of

8

legal action under the VFATA, nothing in that language, or any other language in the VFATA, specifically states that employees of the Commonwealth and its political subdivisions may sue their employers for retaliatory discharge under the statute.  Thus, we conclude that the language in the third paragraph of Code § 8.01-216.8 does not contain an explicit waiver of sovereign immunity allowing employees of the Commonwealth and its political subdivisions to bring retaliatory discharge actions under the VFATA.

Finally, we observe that we previously have rejected other attempts to construe general statutory language as an announcement waiving the Commonwealth's sovereign immunity.  See e.g. Carter, 267 Va. at 245, 591 S.E.2d at 78 (Virginia Tort Claims Act contained no express waiver of immunity for agencies of Commonwealth); Beecher, 202 Va. at 457, 117 S.E.2d at 689 (statutory language stating that entity "may sue and be sued" did not constitute explicit waiver of immunity).  Our conclusion that the VFATA does not contain an explicit and express waiver of the Commonwealth's sovereign immunity regarding retaliatory discharge actions is consistent with our prior holdings, because a waiver of sovereign immunity cannot be implied from general statutory language.  See Gray, 276 Va. at 102, 662 S.E.2d at 71; Afzall, 273 Va. at 230, 639 S.E.2d at 281; Hinchey, 226 Va. at 241, 307 S.E.2d at 895; Beecher, 202 Va. at 457, 117 S.E.2d at

9

689. Accordingly, we hold that the circuit court did not err in sustaining the County's demurrer on the grounds of sovereign immunity.

For these reasons, we will affirm the circuit court's judgment.[6]

<u>Affirmed</u>.

---

[6] Based on our holding, we need not consider Ligon's argument comparing the VFATA to the Federal False Claims Act, 31 U.S.C. §§ 3729–3733 (2006 & Supp. I 2007).